

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| VISTA QUALITY MARKETS, | § | No. 08-13-00163-CV |
| Appellant, | § | Appeal from the |
| v. | § | 210th District Court |
| | § | |
| JORGE LIZALDE, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC#2012-DCV02425) |
| | § | |

**O P I N I O N**

Vista Quality Markets ("Vista") appeals the trial court's order denying its motion to compel arbitration.   We reverse and remand to the trial court with instructions to enter an order compelling arbitration.

**FACTUAL AND PROCEDURAL BACKGROUND**

Vista is engaged in the business of operating grocery stores in El Paso, Texas, and is a non-subscriber to workers' compensation.   In February 2012, after sustaining an on-the-job injury, Appellee Jorge Lizalde sued Vista, his employer, for gross negligence and retaliation under the Employee Retirement Income Security Act of 1974 ("ERISA").[1]   Vista moved to

---

[1] Vista removed the ERISA claims to federal court.

compel arbitration based on the existence of an arbitration agreement between the parties. In support of its motion, Vista attached the affidavit of its Director of Human Resources Joe Pina. Attached to Pina's affidavit was: (1) a copy of Vista's Mutual Agreement to Arbitrate; and (2) a document titled "Receipt of Policy and Arbitration Acknowledgment" signed by Lizalde on July 1, 2009.

In response Lizalde argued, in part, that the motion should be denied because he was fraudulently induced into signing the agreement, that there was no meeting of the minds, that the agreement was illusory due to lack of mutuality of obligation and unenforceable because it was unconscionable. After a hearing, the trial court denied Vista's motion to compel arbitration. This appeal followed.

## DISCUSSION

### *Standard of Review & Applicable Law*

We review a trial court's denial on a motion to compel arbitration for an abuse of discretion. *Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 862-63 (Tex.App. – Dallas 2010, no pet.). A trial court's determination regarding the validity of an arbitration agreement is subject to *de novo* review. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). In evaluating a motion to compel arbitration, we must first determine whether a valid arbitration agreement exists between the parties. *In re D. Wilson Constr. Co*., 196 S.W.3d 774, 781 (Tex. 2006). When a trial court refuses to compel arbitration pursuant to a valid and enforceable arbitration agreement it abuses its discretion. *In re Halliburton Co.,* 80 S.W.3d 566, 573 (Tex. 2002).

A party seeking to compel arbitration must establish the existence of a valid arbitration

2

agreement and show that the claims presented fall within the scope of that agreement. *In re Dillard Dept. Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605 (Tex. 2005); *Budd v. Max International, LLC*, 339 S.W.3d 915, 918 (Tex.App. – Dallas 2011, no pet.). While there is a strong presumption in favor of arbitration, it arises only after a valid arbitration agreement is proven to exist. *J.M. Davidson*, 128 S.W.3d at 227.

## EXISTENCE OF VALID ARBITRATION AGREEMENT

In Issue One, Vista challenges the trial court's denial of its motion to compel arbitration and requests that we reverse and remand this case instructing the trial court to compel arbitration. In pertinent part, Vista asserts the trial court erred in applying the doctrine of incorporation by reference in this case and simultaneously concluding the arbitration agreement was illusory. Lizalde contends the trial court did not abuse its discretion in denying Vista's motion because the arbitration agreement was illusory and unenforceable under Texas law.

Therefore, the dispute is not whether an arbitration agreement between the parties exists, but whether the arbitration agreement was valid based on the defenses Lizalde raised. *See In re AdvancePCS Health*, 172 S.W.3d at 607 (once party seeking to compel arbitration establishes existence of an agreement to arbitrate, the burden shifts to nonmovant to raise an affirmative defense); *J.M. Davidson*, 128 S.W.3d at 227 (same).

### Illusory Agreement

Lizalde argued the arbitration agreement was illusory because Vista could unilaterally modify or amend the agreement at any time. Vista maintains the arbitration agreement is not illusory and that the trial court erred in concluding the termination and modification clause contained in Vista's benefit plan was incorporated by reference into the arbitration agreement.

3

Mutual promises to arbitrate employment constitute sufficient consideration for such agreements. *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 868 (Tex.App. – Houston [14th Dist.] 2006, no pet.). An arbitration agreement is illusory if one party is able to "avoid its promise to arbitrate by amending the provision or terminating it altogether." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010); *In re Lucchese Boot Co.*, 324 S.W.3d 211, 213 (Tex.App. – El Paso 2010, orig. proceeding) (promise to arbitrate not illusory where it cannot be avoided by change or termination); *see also Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 206-09 (5th Cir. 2012) (finding arbitration agreement illusory because employer could unilaterally modify or terminate provision at any time); *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008) (same).

"When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract." *In re 24R, Inc.*, 324 S.W.3d at 567. In the context of a stand-alone arbitration agreement, binding promises from both parties are needed because they are the only consideration exchanged to create a contract. *In re AdvancePCS Health*, 172 S.W.3d at 607. However, when an arbitration clause is part of an underlying contract, the remainder of the parties' agreement provides the required consideration. *See id*.

Lizalde argued Vista's work-related injury plan became part of the arbitration agreement based on the following language within the mutual agreement to arbitrate:

> **7.  Consideration**
> In addition to any other consideration that may exist for the agreement to arbitrate, Company's and Claimant's mutual promise to resolve claims and controversies by arbitration in accordance with the provisions of this Agreement constitutes consideration for this Agreement. Claimant's continued employment with Company after receiving notice of the institution of the Agreement also constitutes consideration for this Agreement. *Finally, this Agreement is presented in connection with Company's Employee Injury Benefit Plan.  Payments made under that Plan also constitute consideration for this Agreement.*

4

(Emphasis added). Based on this language, Lizalde argues the trial court could have determined Vista's work-related injury plan was intended to be part of the arbitration agreement between the parties. Accordingly, he contends the arbitration agreement is illusory because the "Amendment and Termination" provisions of Vista's work-related injury plan allows Vista to unilaterally amend the arbitration agreement without notice. The "Amendment and Termination" provisions of Vista's work-related injury plan provide:[2]

> **ARTICLE VI**
> **AMENDMENT AND TERMINATION**
> A. **Amendment.** The Company has the sole right to amend this Plan. An amendment may be made by (i) a certified resolution or consent of the Board of Directors, or (ii) by an instrument in writing executed by the appropriate officer of the Company. The amendment must describe the nature of the amendment and its effective date.
> B. **Termination.** The Sponsor may terminate this Plan by executing and delivering to the Plan Administrator a notice of termination specifying the date of termination. Likewise, this Plan shall automatically terminate if there is a general assignment to or for the benefit of the creditors of the Sponsor. This Plan shall also terminate upon any action by the Company or an insurance carrier to cancel, non-renew, or otherwise fail to renew an occupational injury insurance policy that was purchased in conjunction with the adoption of this Plan document.

(Emphasis in original).

In support of his argument, Lizalde relies on and adopts the reasoning in the memorandum opinion and order of the United States District Court Judge for the Western District of Texas, El Paso Division, on his ERISA claims, in *Jorge Lizalde v. Vista Quality Markets*, Civil Action No. EP-12-CV-156-DB, dated December 11, 2012, in which the United States District Court denied Vista's motion to compel arbitration finding that the same arbitration agreement at issue here was illusory because it allowed Vista to unilaterally terminate the agreement. However, as correctly

---

[2] The Summary Plan Description of Vista's work-related injury plan (SPD) which generally explains and gives an overview of the benefits of the work-related injury plan and the terms and conditions under which benefits are payable recites the same language contained in the "Amendment and Termination" provisions of the work-related injury plan.

pointed out by Vista in its letter brief, the Fifth Circuit recently reversed the district court's ruling, holding the arbitration agreement was not illusory under Texas law and remanded the case for the entry of an order compelling arbitration. *See Lizalde v. Vista Quality Markets*, 746 F.3d 222, 224 (5th Cir. 2014).

We do not agree with Lizalde that the arbitration agreement is illusory because it incorporated by reference, Vista's work-related injury plan or SPD thereby expressly allowing Vista to unilaterally amend the arbitration agreement at any time without notice. The fact that paragraph 7 of the arbitration agreement reads that the arbitration agreement "is presented in connection with" Vista's work-related injury plan does not establish that the agreement to arbitrate and the work related-injury plan are one and the same. *See Sun Fab Industrial Contracting, Inc. v. Lujan*, 361 S.W.3d 147, 152-53 (Tex.App. – El Paso 2011, no pet.) (concluding that although an employee handbook was mentioned in the arbitration agreement, it did not mean the handbook was incorporated in the arbitration agreement or that the arbitration agreement incorporated the handbook). Rather, paragraph 5(b) of the arbitration agreement clearly sets out that "[c]laims for benefits under the Company's Employee Injury Benefit Plan" are not covered by the agreement.

Moreover, paragraph 12 of the arbitration agreement specifies that the agreement "constitutes the parties' complete agreement and supersedes any prior agreement regarding arbitration of Covered Claims …." Likewise, we are not convinced the recitation in paragraph 7 stating that "Payments made under that Plan also constitute consideration for this Agreement," means that the work-related injury plan is incorporated by reference. In fact, paragraph 7 specifically states in addition to any other consideration that may exist, the parties' mutual promise to arbitrate in accordance with the arbitration agreement constitutes consideration for the

6

agreement to arbitrate. Accordingly, Vista's ability to unilaterally amend or modify its work-related injury plan pursuant to the "Amendment and Termination" provisions found in the plan and SPD do not pertain to or affect the enforceability of Vista's promise to submit all covered claims to arbitration as required by the agreement to arbitrate.

## Ambiguous Agreement

Alternatively, Lizalde argues the trial court did not abuse its discretion in denying Vista's motion to compel arbitration because: (1) the phrase "This Program Agreement" in paragraph 12 of the arbitration agreement is ambiguous; and (2) the trial court in its discretion resolved the ambiguity by concluding that Vista's work-related injury plan and SPD were part of the arbitration agreement, which rendered the arbitration agreement illusory. It appears Lizalde's argument attempts to develop the *obiter dictum* contained in our opinion in *In re ReadyOne Indus., Inc.*, 400 S.W.3d 164 (Tex.App. – El Paso 2013, orig. proceeding).[3] Although we agree the phrase "This Program Agreement" in paragraph 12 of the arbitration agreement may be confusing, we are not convinced by Lizalde's argument.

Even assuming, as Lizalde contends that due to the ambiguous language in the arbitration agreement and other evidence presented, the trial court could have resolved the ambiguity to conclude the agreement to arbitration, plan documents, and SPD were part of the same contract, in light of the Fifth Circuit's recent holding in *Lizalde*, we find no merit in Lizalde's arguments and

---

[3] In footnote 4 of the opinion, this Court expressed, "We note that the language contained in the MAA generally comports with ReadyOne's argument. For example, throughout the MAA it identifies itself as this 'Agreement' while specifically naming the Company's 'Employee Injury Benefit Plan.' However, a potential ambiguity may exist within the MAA's provision titled 'Sole and Entire Agreement,' which provides in part: 'This Program Agreement constitutes the parties' complete agreement and supersedes any prior agreement regarding arbitration of Covered Claims which occur during the Term of this Agreement.' The significance of 'This Program Agreement' is ambiguous." *In re ReadyOne Indus., Inc.*, 400 S.W.3d at 170 n.4.

7

conclude the arbitration agreement is not illusory. *See Lizalde*, 746 F.3d at 226-27. We find *Lizalde* highly persuasive, especially considering it involves the identical agreement, Plan documents, and parties in the case at bar. *See id.*

In *Lizalde*, in challenging the district's court determination that the arbitration agreement was illusory, Vista argued: (1) that the arbitration agreement and work-related injury plan were not properly read as a single contract such that the termination provision in the plan did not apply to the arbitration agreement; and (2) that even if the two agreements were read as a single contract, the work-related injury plan's termination provision did not apply to the arbitration agreement because the agreement had its own properly defined termination provision. *Id.* at 225. The Fifth Circuit saw no need to address Vista's first argument as it agreed that even if the plan documents and the arbitration agreement were read as one contract the arbitration agreement was not illusory because the agreement to arbitrate could not be terminated without following the agreement's established procedures. *Id.*

For purposes of interpreting the arbitration agreement, the Fifth Circuit assumed the district court correctly construed the plan documents and arbitration agreement as a single contract. *Id.* at 225-26. In looking at the plan documents and the arbitration agreement, the Fifth Circuit stated:

> Looking at the two agreements in this case, we see no indication that the parties intended the broader termination provision found in the Benefit Plan to also apply to the Arbitration Agreement. Here, the Arbitration Agreement is specifically crafted to provide a narrowly-tailored termination clause that ensures its enforceability; this deliberate wording makes it difficult to accept that the parties intended for the unconstrained termination provision found in the Benefit Plan to apply to the Arbitration Agreement. Additionally, applying the Benefit Plan termination provision to the Arbitration Agreement would render the termination provision found in the Arbitration Agreement superfluous, an outcome disfavored

8

by Texas contract law. *See J.M. Davidson Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) ("To [ascertain the intentions of the parties], we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.").

*Id*. at 226-27. We agree with *Lizalde* that the parties included a termination provision in the arbitration agreement circumscribing Vista's power to terminate the agreement, the termination provisions respectively found in the work-related injury plan, SPD, and arbitration agreement state that they apply only to the agreement or document in which they are set forth, and applying the termination provision of Vista's work-related injury plan to its arbitration agreement would render the termination provision of the arbitration agreement meaningless. *See id*. at 227. Therefore, even though the one use of the phrase "This Program Agreement" may be confusing, based on the foregoing considerations, we conclude that even when read as a single agreement, Vista's arbitration agreement is not ambiguous, illusory, or unenforceable.

## OTHER GROUNDS

Next, Vista asserts the other defenses raised in Lizalde's response to its motion to compel arbitration are without merit.[4] We briefly address each argument in turn.

### The FAA

First, Vista maintains that the Federal Arbitration Act (FAA)[5] governs the parties' agreement to arbitrate. Lizalde argued the FAA did not apply to the arbitration agreement because there was no transaction involving commerce. However, Lizalde does not raise that specific complaint on appeal or otherwise dispute that the FAA applies to the arbitration agreement.

---

[4] Lizalde has not responded to these arguments in his appellate brief.
[5] *See* 9 U.S.C.A. §§ 1-16.

9

The FAA applies to all suits in state or federal court, when the dispute concerns a "contract evidencing a transaction involving commerce." *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269-70 (Tex. 1992) (orig. proceeding). The term "commerce" has been broadly defined and includes contracts relating to interstate commerce. *In re Gardner Zemke Co.*, 978 S.W.2d 624, 626 (Tex.App. – El Paso 1998, orig. proceeding). Under the FAA there is no requirement that the effect on interstate commerce be substantial; however, it requires that commerce be involved or affected. *In re L&L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding); *In re Merrill Lynch Trust Company FSB*, 123 S.W.3d 549, 553 (Tex.App. – San Antonio 2003, orig. proceeding).

The arbitration agreement in question specifies that Vista is engaged in "commerce" as defined by Section 1 of the FAA and that the FAA governs all aspects of the agreement. In his affidavit, Pina asserts Vista regularly receives goods and services from outside the State of Texas in order to provide products to its customers, uses the United States Postal Service and other interstate mail services to send and receive mail from outside of the State, and uses interstate telephone services and the Internet to communicate with customers and suppliers located outside of Texas. Based on the foregoing, and because Lizalde does not dispute that Vista engaged in interstate commerce on appeal, we conclude Vista was involved in interstate commerce and that the FAA governs the arbitration agreement. *See In re Border Steel*, 229 S.W.3d 825, 830-31 (Tex.App. – El Paso 2007, orig. proceeding) (holding FAA applied to arbitration agreement because employer was involved in interstate commerce because it purchased goods and services outside of Texas and it used interstate mail); *In re Big 8 Food Stores*, 166 S.W.3d 869, 879-80 (Tex.App. – El Paso 2005, orig. proceeding) (concluding FAA applied to arbitration agreement

10

between employer and employee where employer purchased goods, served customers, and advertised outside of Texas).

## The FAA's Effect on Texas's Workers' Compensation Scheme

Lizalde argued Vista's motion to compel arbitration should be denied and that the arbitration agreement was unenforceable because Congress never intended the FAA to eviscerate or preempt a State's workers' compensation scheme. Vista responds that an application of the FAA in the present case does not have the effect of eviscerating the workers' compensation scheme in Texas. We agree. The Texas Supreme Court has held that statutory claims under the Texas Workers' Compensation Act can be arbitrated. *See In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 423 (Tex. 2010). The Supreme Court has also observed that a party who agrees to arbitration does not forgo any substantive rights afforded to him by statute, but rather submits their resolution in an arbitral, rather than a judicial forum. *In re Poly-America, L.P.*, 262 S.W.3d 337, 352 (Tex. 2008). Additionally, the Supreme Court has concluded that compliance with the FAA does not "directly impair [Texas's] ability to structure integral operations in areas of traditional government functions." *In re Odyssey Healthcare, Inc.*, 310 S.W.3d at 424. Because we agree with Vista that Lizalde has not waived any substantive rights and has failed to point to any procedures under the arbitration agreement which prevent him from effectively vindicating his rights, we conclude Lizalde's argument is unpersuasive and without merit.

## Violation of the Tenth Amendment of the U.S. Constitution

In arguing that the arbitration agreement was unenforceable, Lizalde also contended that "any attempt by the FAA to trump the Texas Workers Compensation Act or the [TAA] is a

11

violation of the 10th Amendment to the U.S. Constitution." However, the Texas Supreme Court has held that the FAA does not violate the Tenth Amendment by encroaching on a state power to enact and regulate its workers' compensation system. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d at 423. Accordingly, Lizalde's argument is without merit.

## The Texas Arbitration Act

Lizalde asserted the arbitration agreement was not enforceable because it violated Section 171.002(c) of the Texas Arbitration Act (TAA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.002(c) (West 2011). Vista maintains Lizalde's argument fails because the FAA preempts all provisions of Texas law conflicting or imposing additional requirements. In the instant case, we have already determined the FAA applies to the arbitration agreement between the parties. Because the FAA preempts inconsistent state law including the TAA provision Lizalde relies upon, we conclude that Vista's failure to comply with Section 171.002(c) does not render the arbitration agreement unenforceable, as Lizalde claims. *See In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 887, 891 (Tex. 2010) (orig. proceeding) (rejecting argument that arbitration agreements were unenforceable for failure to comply with TAA requirements because the FAA preempted Section 171.002(a)(2) of the TAA); *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (discussing FAA's preemption of TAA provisions); *see also Royce Homes, L.P. v. Bates*, 315 S.W.3d 77, 85 (Tex.App. – Houston [1st Dist.] 2010, no pet.) (FAA preempts inconsistent state laws, including provisions of the TAA).

## Section 406.033(e) of the Texas Labor Code[6]

Vista claims Lizalde's contention that the non-waiver provision of the Texas Workers' Compensation Act renders the arbitration agreement void has no merit. We agree. It is well

---

[6] *See* TEX. LAB. CODE ANN. § 406.033(e) (West 2006).

established in Texas that Section 406.033(e) does not render an arbitration agreement void. *See In re Odyssey Healthcare, Inc.*, 310 S.W.3d at 423; *In re Golden Peanut Co., LLC*, 298 S.W.3d 629, 631 (Tex. 2009) (orig. proceeding); *In re Border Steel, Inc.*, 229 S.W.3d at 832. As such, we reject Lizalde's Section 406.033(e) defense to the agreement to arbitrate.

### Meeting of the Minds/Fraudulent Inducement

Vista argues Lizalde failed to show fraudulent inducement or no meeting of the minds. Lizalde claimed he was fraudulently induced into signing the arbitration agreement because: (1) he did not know what he was signing, (2) he was not told that what he was signing would waive his right to a jury trial, and (3) he was never informed he could refuse to sign the agreement or that he had the right not to sign the agreement. As to whether there was a meeting of the minds between the parties, Lizalde argued he was not told he was signing an arbitration agreement and was not given an explanation as to what constitutes an arbitration agreement. Lizalde contends his ignorance of the fact that he signed an arbitration agreement signifies that he may not have consented to the agreement and that a meeting of the minds did not exist.

Fraudulent inducement claims have the same elements as fraud claims, plus an additional element that the fraud related to an agreement between the parties. *In re VNA Inc.*, 403 S.W.3d 483, 487 (Tex.App. – El Paso 2013, orig. proceeding). The elements of fraud are (1) a material misrepresentation, (2) made with knowledge of its falsity or without any knowledge of the truth and as a positive assertion, (3) made with the intention that it should be acted on by the other party, and (4) the other party acts in reliance on the misrepresentation and thereby suffers injury. *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 328 (Tex.App. – Houston [14th Dist.] 2011, no pet.) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41,

13

47-48 (Tex. 1998)); *see also In re VNA*, 403 S.W.3d at 487.

Lizalde's affidavit stated that the documents were never explained to him and that the first time he ever heard of an arbitration agreement was after a motion to compel was filed. He stated that he may have unknowingly signed the arbitration agreement as it was located "somewhere within a stack of documents" given to him by Vista. However, nothing in his affidavit indicates Vista made any false representations regarding the arbitration agreement. Moreover, the arbitration agreement states, in plain language, that the parties agree to arbitrate their disputes and that they waive their right to a jury trial.

The presence or absence of signatures on a written contract is relevant to determining whether the parties are bound by the contract. *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex.App. – El Paso 2004, orig. proceeding). A party's signature on a contract is strong evidence the party unconditionally assented to its terms. *Id.* Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he reads it or believed it had different terms. *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005). Because there is no evidence Vista made any false representations to Lizalde about the arbitration agreement, and that by having signed the arbitration agreement Lizalde is presumed to know its contents, we conclude there is no evidence in the record from which the trial court could have determined Lizalde was fraudulently induced into signing the arbitration agreement. *See In re Border Steel, Inc.*, 229 S.W.3d at 834-35 (concluding arbitration agreement was not fraudulently induced where plaintiff claimed all employees were given a stack of employment documents which included the employee's benefit plan, and was expected to sign them without sufficient time for review, and without explanation because nothing in the record showed

14

plaintiff relied on employer's statement when plaintiff entered into the benefit plan); *see also In re ReadyOne Industries Inc.*, 420 S.W.3d 179, 186-87 (Tex.App. – El Paso 2012, orig. proceeding) (concluding plaintiff's affidavit testimony stating that she was provided with a few documents to sign during orientation, and was only given signature pages with no explanation as to what those documents related to, and that she assumed the document related to her W-2 tax forms did not constitute evidence of fraud in connection with existence of arbitration agreement and did not establish a colorable basis or reason to believe pre-arbitration discovery would be material in showing she was fraudulently induced into signing the agreement and that, consequently there was no meeting of the minds).

### Unconscionable Agreement

Vista argues Lizalde failed to establish the arbitration agreement was unconscionable. Unconscionability involves two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision; and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *In re Peoples Choice Home Loan Inc.*, 225 S.W.3d 35, 44 (Tex.App. – El Paso 2005, orig. proceeding). As the party seeking to invalidate the arbitration agreement, Lizalde bears the burden of proving unconscionability. *See id*.

Lizalde argued the arbitration agreement was substantively unconscionable because: (1) the arbitration agreement did not mention the amount of discovery allotted to him, if any; and (2) the agreement required him to participate in arbitration that sought to substantively modify his rights and remedies under Texas law and failed to "provide for all the remedies…[he] would have in court." The arbitration agreement expressly provides:

#### d. **Discovery and Pre-Arbitration Motions**
All parties are entitled to pre-arbitration discovery under the Texas Rules of Civil Procedure. The same discovery devices and scope of discovery as set forth in those rules shall apply. All parties are entitled to file any motions, including dispositive motions, set forth in the Texas Rules of Civil Procedure.

#### e. **Remedies and Defenses**
All parties are entitled to allege any claim, obtain any remedy and assert any legal or equitable defense that the party could allege, obtain or assert in a Texas state or federal court.

Nothing in the arbitration agreement indicates the parties are not entitled to discovery and in fact, the agreement provides for pre-arbitration discovery under the Texas Rules of Civil Procedure. Similarly, nothing in the arbitration agreement attempts to substantively modify Lizalde's rights and remedies under Texas law, but rather permits the parties to claim and obtain any remedy or defense available to them in a Texas state or federal court. As such, we conclude Lizalde has failed to satisfy his burden of proving the arbitration agreement is unconscionable. *See In re Fleetwood Homes of Texas L.P.*, 257 S.W.3d 692, 695 (Tex. 2008) (orig. proceeding) (holding that an arbitration's limitation on discovery does not render agreement unconscionable); *In re Halliburton Co.*, 80 S.W.3d at 572 (concluding plaintiff failed to carry burden to show arbitration program was unconscionable where program had several terms that provided protection to the employee in process).

Because Vista's arbitration agreement is not illusory and unenforceable and Lizalde did not establish any valid defenses to the arbitration agreement, the trial court erred by denying Vista's motion to compel arbitration. Issue One is sustained.

## CONCLUSION

The trial court's judgment is reversed and the case is remanded for entry of an order

compelling arbitration and abating the proceedings in the trial court.


                                           GUADALUPE RIVERA, Justice

June 6, 2014

Before Rivera, J., Rodriguez, J., and Barajas, C.J. (Senior Judge)
Barajas, C.J. (Senior Judge), sitting by assignment