COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

APC HOMEMAKER SERVICES, INC.,　　　　　　　　No. 08-14-00266-CV

§

　　　　　Appellant,　　　　　　　　　　　　　　　Appeal from the

§

v.　　　　　　　　　　　　　　　　　　County Court at Law No. 5

§

ELVIRA PANDO,　　　　　　　　　　　　　　of El Paso County, Texas

§

　　　　　Appellee.　　　　　　　　　　　　　(TC# 2014-DCV-1490)

§

## **O P I N I O N**

Appellant APC Homemaker Services, Inc., (APC) seeks reversal of a trial court order denying a motion to compel arbitration against employee Elvira Pando. We affirm.

## BACKGROUND

In her original complaint, Pando alleged that on July 19, 2012, she sustained an on-the-job injury when one of her home care patients tripped and fell on her right knee. Pando underwent knee surgery the following December. APC alleges that two months after her surgery, on February 15, 2013, Pando executed an arbitration agreement governing employer-employee disputes, including personal injury claims. The Arbitration Agreement, in relevant part, states as follows (bolding and underlining in the original; italics added for emphasis):

> **APC HOME HEALTH SERVICE, INC.** ('Company,' 'we' or 'our') maintains a mandatory binding arbitration policy. It is a condition of your employment with us that you and we agree to arbitrate all arbitrable claims arising

from or related to your employment with us (the 'Claims,' itemized below), save and except any benefit claims arising under our Occupational Injury Benefit Plan, and any claims made not arbitrable by governing statute or rule.

1. **Effective Date**:  The effective date of this Arbitration Agreement and Notice of Arbitration Policy (this 'Arbitration Agreement') is 5/16/2012 (the 'Effective Date').   If you receive notice of this Arbitration Agreement before you begin work for Company, your commencement of work for Company will be your acceptance of the terms of this Arbitration Agreement.  *If you are already working for Company when you receive notice of this Arbitration Agreement, and you continue working for us for more than three more days, you will be deemed to have accepted the terms of this Arbitration Agreement on the fourth day, and thereafter.  In that event, the fourth day is your effective date to be governed by this Arbitration Agreement.*  **IF YOU CONTINUE TO WORK FOR US AFTER THE EFFECTIVE DATE, YOU AND WE WILL HAVE MUTUALLY AGREED TO ARBITRATE ALL COVERED CLAIMS BETWEEN US, APPLYING THE TERMS OF THIS ARBITRATION AGREEMENT.**

2. **Arbitration is Mandatory, Binding, and Mutual:** All Claims related to your employment with us arising in any part after the Effective Date, save and except any benefit claims under our Occupational Injury Benefit Plan and any claims made not arbitrable by governing statute or rule, will be resolved only through mandatory binding arbitration.  **You and we both agree to arbitrate all Claims, and you and we both waive all rights to a jury or non-jury trial in state and federal court as to the Claims.**

.          .          .

4. **The Claims:** Claims covered under this Arbitration Agreement include, but are not limited to the following:  (i) claims arising from any injury suffered by an Employee while in the Course and Scope of Employment with Company, including but not limited to claims for negligence, gross negligence, and all claims for personal injuries, physical impairment, disfigurement, pain and suffering, mental anguish, wrongful death and survival actions, loss of services and or consortium, emotional distress, and exemplary or punitive damages if allowed . . . Covered Claims include medical and hospital expenses, drugs and durable medical equipment, and medical transportation, to the extent those expenses and items are not benefits covered under Company's Occupation Injury Benefit Plan.  'Course and Scope of Employment' means an activity of any kind that has to do with the work, business, trade, or profession of Company and is performed by

you while engaged in or about the furtherance of the affairs or business of Company, whether conducted on Company premises or elsewhere.

.      .      .

9. **One-Year Time Limit on Bringing a Claim**: All parties must file a Claim for arbitration within one (1) year after the date of the incident or occurrence giving rise to the Claim. Failure to do so will result in the Claim being barred as at that one-year date.

.      .      .

13. **Severability**: If any provision of this Arbitration Agreement is adjudged to be invalid, illegal, or unenforceable, in whole or in part, the remaining provisions of this Arbitration Agreement will remain in effect. This Arbitration Agreement has been translated into Spanish. In event of conflict, or apparent conflict between the Spanish version and this version, this version will govern.

Pando, who has limited ability in reading, writing, or understanding English purportedly signed a Spanish-language translation of this agreement and continued working for the company. In her affidavit, Pando denied ever seeing this document before her attorneys showed it to her and stated that she did not remember ever signing it. However, she did admit that

> From time to time, I was brought in to sign documents. When I was called in to sign paperwork, I was required to sign things and I did not know why. I was told that the documents were routine paperwork or documents I needed to sign to receive benefits for my injury. I was misled into believing that the documents were not important and were just routine documents that the company needed to complete their paperwork on my employment and/or so I could receive benefits for my injury. I did not know that what I was signing was an arbitration agreement or anything other than papers required to be signed for my job. I was never told that I could be waiving rights that I had or that I could seek the advice of an attorney before signing these documents. I was never told the documents contained an arbitration agreement. I was never given any time to review the documents prior to signing them.

Pando filed suit on May 13, 2014. APC moved to compel arbitration. Pando resisted, arguing *inter alia* that her claim arose before the Arbitration Agreement became effective, and asserting in the alternative that the arbitration agreement was unconscionable. The trial court

denied APC's motion to compel. This appeal followed.

## DISCUSSION

In two issues, APC argues that the trial court abused its discretion by failing to compel arbitration because (1) a valid arbitration agreement that covers this dispute exists between the parties, and (2) Pando cannot establish any legitimate defenses against enforcement, including unconscionability. We need not reach Issue Two, because APC cannot succeed on Issue One.

In Issue One, APC contends that Pando's personal injury claim is subject to arbitration because even though Pando manifested acceptance of the agreement after her July 2012 injury, both parties agreed to retroactively set the effective date of the agreement to May 16, 2012, which would bring her claim within the scope of coverage. Alternatively, APC argues that "claim" under this agreement essentially means "to make a demand on the company," and since Pando indisputably filed a "claim" against the company by bringing a lawsuit in May 2014 after accepting the Arbitration Agreement, the trial court erred by refusing to compel arbitration.

Pando counters that specific language at the end of the Effective Date Clause in Paragraph 1[1] makes clear that the actual effective date of the agreement as applied to her was four days after she received it, since the clause set a different effective date for existing employees who accepted the agreement by continuing to work for the company. She also dismisses APC's interpretation of the word "claim" based on a contextual reading of the agreement as a whole. We agree with Pando on both counts. Her claim falls outside the temporal scope of the agreement, and the trial court did not abuse its discretion by denying arbitration.

---

[1] "If you are already working for Company when you receive notice of this Arbitration Agreement, and you continue working for us for more than three more days, you will be deemed to have accepted the terms of this Arbitration Agreement on the fourth day, and thereafter. In that event, the fourth day is your effective date to be governed by this Arbitration Agreement."

4

***Standard of Review***

We review the trial court's arbitration decision for abuse of discretion. *Vista Quality Mkts. v. Lizalde*, 438 S.W.3d 114, 117 (Tex.App.--El Paso 2014, no pet.). Whether an arbitration agreement is enforceable is a question of law we review *de novo*. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). A trial court abuses its discretion when it refuses to compel arbitration in the face of a valid arbitration agreement. *In re Halliburton Co.,* 80 S.W.3d 566, 573 (Tex. 2002)(orig. proceeding).

To compel arbitration, the movant must first establish the existence of a valid arbitration agreement that encompasses the claim at issue. *Vista Quality Mkts.*, 438 S.W.3d at 117. Once the movant meets its burden, a strong presumption in favor of arbitration attaches. *Id*. The non-movant then bears the burden of establish a valid defense against arbitration. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010)(orig. proceeding).

***Analysis***

As a threshold matter, we address APC's point, filed in a reply brief, that arbitration is required because notwithstanding Pando's claim that she never signed the agreement, she "ratified" the Arbitration Agreement by accepting benefits under it. The briefing on this point is unclear, but the general thrust of APC's ratification argument is that Pando's action conclusively bound her to the agreement's terms; thus, arbitration is required. Whether Pando accepted the Arbitration Agreement or merely ratified it is a distinction without a difference under these facts. The heart of this dispute concerns the agreement's scope. Assuming without deciding that Pando is bound to the agreement one way or another, she is only bound to arbitrate claims that actually fall within the scope of the Arbitration Agreement. If the agreement does not embrace her claim, all other issues are irrelevant, and the trial court's order must be affirmed. *Vista Quality Mkts.*,

438 S.W.3d at 117.

APC advances two alternative readings in support of its assertion that Pando's personal injury claim falls within the scope of the Arbitration Agreement. Neither is meritorious.

**Backdated Effective Date**

First, APC maintains that the Arbitration Agreement reaches Pando's personal injury claim because the parties mutually agreed to backdate the agreement to be effective May 16, 2012, in the first sentence of Paragraph 1. Pando argues that because she was already employed by APC when she received the Arbitration Agreement, the actual effective date of the agreement as set by the Effective Date Clause's third and fourth sentences was in February 2013—four days after she purportedly accepted the terms, and more than eight months after she was injured. We agree with Pando.

We construe arbitration agreements using standard contract principles. *Firstlight Fed. Credit Union v. Loya*, No. 08-14-00282-CV, 2015 WL 5841505, at *8 (Tex.App.--El Paso Oct. 7, 2015, no pet. h.). In interpreting a contract, we "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." [Internal citations omitted]. *Id*.

Paragraph 1 contains two arguably conflicting effective dates. However, this conflict is not irreconcilable. Rather, the general vs. specific canon neatly resolves the apparent conflict between these two effective dates. *See NuStar Energy, L.P. v. Diamond Offshore Co.*, 402 S.W.3d 461, 466 (Tex.App.--Houston [14th Dist.] 2013, no pet.)(noting that contract parties may choose to set out a general rule in one provision and exceptions to that rule in other provisions, and that to the extent provisions conflict, "specific provisions control over more general ones").

Paragraph 1 states that although "[t]he effective date of this Arbitration Agreement and

6

Notice of Arbitration Policy . . . is 5/16/2012[,] . . . [i]f you are already working for Company when you receive notice of this Arbitration Agreement, and you continue working for us for more than three more days, you will be deemed to have accepted the terms of this Arbitration Agreement on the fourth day, and thereafter. *In that event, the fourth day is your effective date to be governed by this Arbitration Agreement*." [Emphasis added]. The specific italicized provision that deals with acceptance by existing employees clearly operates as an exception to the generally applicable effective date set in the first sentence. *See NuStar Energy, L.P.*, 402 S.W.3d at 466. Pando is correct that APC's proposed reading would render the italicized sentence superfluous, which we must avoid doing if possible. *See Certain Underwriters at Lloyd's of London Subscribing to Policy No.: FINFR0901509 v. Cardtronic, Inc.*, 438 S.W.3d 770, 776 (Tex.App.--Houston [1st Dist.] 2014, no pet.)(courts should avoid reading contract provisions as "meaningless surplusage"). We believe the correct reading here is that the effective date of the Arbitration Agreement as applied to already-existing employees like Pando is four days after notice and not May 16, 2012.

## When Does a Claim Arise?

Second, in the alternative, APC avers that even if the Arbitration Agreement did not become effective until Pando accepted the agreement through continuing employment in February 2013, the date Pando's claim arose under the Arbitration Agreement was the date she filed suit in this case: May 13, 2014. Since it is undisputed that Pando did not make an actual "claim" demanding compensation from the company until after the Arbitration Agreement was already in effect, APC maintains this case clearly falls within the agreement's ambit and must be submitted to arbitration. We disagree.

We read legal texts as a cohesive whole—not piecemeal or in isolated provisions. *See*

7

*Clayton Williams Energy, Inc. v. BMT O&G TX, L.P.*, No. 08-14-00133-CV, 2015 WL 4134577, at *7 (Tex.App.--El Paso July 8, 2015, pet. filed)(noting that courts should "not cherry-pick words and read them in a vacuum" when interpreting a legal text). In order to reach its conclusion that Pando's lawsuit is the trigger event for determining when a claim "arises" under the arbitration agreement, APC conflates "claim" the noun (i.e. a cause of action) with "claim" the verb (i.e., the act of making a demand), and then essentially argues that the "All Claims related to your employment with us arising in any part after the Effective Date" language in Paragraph 2 means that any attempt to file for compensation after the effective date of the agreement triggers a duty to arbitrate.

Admittedly, the agreement uses the word "claim" both ways at various points, but a careful reading of the Arbitration Agreement does not support APC's blanket theory that "claim" means "making a demand" at every point throughout the agreement and that filing for compensation is the trigger event for determining when arbitration is required. In the first place, Paragraph 4 sets out a list of arbitrable "claims" that suggests the parties thought the word "claim" was akin to a cause of action that arises prior to any litigious action. This understanding of the word "claim" is bolstered by the Limitations Clause in Paragraph 9, which dispels any semantic ambiguity and conclusively shows that filing a "claim" against the company cannot be the trigger event that causes a claim to "arise" under the Arbitration Agreement as a matter of basic logic. The Limitations Clause states that in the event of a personal injury dispute, an employee must "file a Claim for arbitration" less than a year *after* a predicate "incident or occurrence giving rise to the Claim" transpires. By treating the word "claim" as an action rather than a cause of action at every point in the agreement, the company bring Pando's claim within the temporal scope of the agreement, but only by eviscerating the Limitations Clause and turning

8

it into a looping tautology. It makes no sense to set a one-year limitation period to file a "claim," and then in the same sentence say that the predicate "incident or occurrence giving rise to the Claim" is the filing of a Claim. This reading renders the entire Limitations Clause nugatory and self-defeating. Again, we must avoid a reading that voids an entire section of a contract, if possible. *See Certain Underwriters at Lloyd's of London*, 438 S.W.3d at 776.

Instead, a proper contextual reading of the Arbitration Agreement that gives meaning to all provisions shows that the parties contemplated that a predicate "incident or occurrence" would give rise to a "claim" that could then be filed and arbitrated within a year's time if it was covered under Paragraph 4. Thus, in determining when a claim arises under this agreement, we look to the date of the "incident or occurrence" that caused a cause of action to accrue, not the date the lawsuit was filed. Because Paragraph 2 makes clear that the Arbitration Agreement reaches only those "Claims related to your employment with us *arising in any part after the Effective Date*[,]" [emphasis added] and because Pando's alleged injury occurred before the agreement's effective date, her personal injury claim falls outside the temporal scope of the agreement and is not arbitrable. The trial court correctly retained jurisdiction over this dispute.

## CONCLUSION

Issue One is overruled. Because APC cannot meet its threshold burden of showing the agreement encompasses this dispute, we decline to address Issue Two regarding Pando's unconscionability defense as unnecessary to the resolution of this appeal. The trial court's order is affirmed.

December 16, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

9