

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| FIRSTLIGHT FEDERAL CREDIT UNION, | § | No. 08-14-00282-CV |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 171st District Court |
| | § | |
| MARTHA LOYA, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 2014-DCV-0943) |
| | § | |

**O P I N I O N**

FirstLight Federal Credit Union moved to compel arbitration of discrimination and retaliatory discharge claims filed by its former employee, Martha Loya. Loya argued that no agreement to arbitrate existed between the parties because she had not signed the agreement, and that in any event, her claims did not fall within the scope of the arbitration agreement, and the agreement was illusory. The trial court denied FirstLight's motion to compel.

The key issues on appeal concern: (1) the effect of a delegation clause contained in the arbitration agreement, which gives the arbitrator the power to determine the gateway issues of the validity and enforceability of the agreement; and (2) whether Loya was bound by the arbitration agreement, despite her failure to sign the agreement, because she continued her employment after receiving notice of the arbitration agreement. We agree with FirstLight that the delegation clause

required Loya to arbitrate one of her challenges to the agreement – whether it was illusory. Despite the delegation clause, however, Loya's assertion that her claims did not fall within the scope of the agreement, and Loya's challenge to the very existence of an agreement to arbitrate, were issues for the trial court to decide.

Ultimately, we conclude the trial court abused its discretion in refusing to compel arbitration. Loya, as an at-will employee, was bound by the agreement as a matter of law despite her lack of signature, because she continued working after receiving notice of the arbitration agreement. Further, Loya's claims clearly fell within the scope of the agreement. Accordingly, we reverse and remand for entry of an order compelling arbitration of Loya's claims.

## DISCUSSION

### Standard of Review

We review a trial court's decision to grant or deny a motion to compel arbitration under an abuse of discretion standard. *Wright v. Hernandez*, No. 08-14-00303-CV, __S.W.3d__, 2015 WL 4389582, at *3 (Tex.App. – El Paso July 17, 2015, no pet.); *Ellman v. JC Gen. Contractors,* 419 S.W.3d 516, 520 (Tex.App. – El Paso 2013, no pet.). Under this standard, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.,* 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *Wright*, 2015 WL 4389582, at *3; *Ellman,* 419 S.W.3d at 520; *ReadyOne Indus., Inc. v. Carreon,* 458 S.W.3d 621, 623 (Tex.App. – El Paso 2014, no pet.). The validity and enforceability of an arbitration agreement is a question of law that we review *de novo. In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (orig. proceeding); *IHS Acquisition No. 131, Inc. v. Iturralde*, 387 S.W.3d 785, 790 (Tex.App. – El Paso 2012, no pet.) A trial court abuses its

2

discretion when it refuses to compel arbitration under a valid and enforceable arbitration agreement. *In re 24R, Inc.*, 324 S.W.3d at 566; *Iturralde*, 387 S.W.3d at 790.

**Background**

Loya was an at-will employee. She began working at FirstLight in 2004 as a loan officer. Loya advanced through several positions over the years, ultimately holding the position of collections manager when she was terminated in September 2013. Loya complained to the Equal Employment Opportunity Commission that she was wrongfully terminated based on her age, sex, and race, and in retaliation for reporting an inappropriate relationship involving a supervisor. After receiving her notice of right to sue, Loya sued FirstLight under the Texas Commission on Human Rights Act.

FirstLight filed a motion to compel arbitration, contending that a 2011 arbitration agreement governed the parties' dispute. The trial court held three hearings on FirstLight's motion to compel, receiving evidence, testimony, and legal arguments concerning the validity and enforceability of the arbitration agreement, including FirstLight's contention that a delegation clause in the arbitration agreement required that the arbitrator, not the court, resolve the gateway issues of validity and enforceability.[1]

According to the evidence, in December 2005, FirstLight sent notice to its employees that effective February 1, 2006, it was adopting a "Dispute Resolution Policy" requiring that all legal disputes arising from employment, including claims for wrongful termination, would be subject to mandatory arbitration. The notice informed the employees that their decision to continue employment with FirstLight after February 1, 2006, would constitute their agreement to be bound by the Policy. Loya signed a "Receipt Acknowledgment" on December 20, 2005, acknowledging

---

[1] While Loya filed a response to FirstLight's motion to compel, she did not present any evidence to the trial court.

3

that she had received a copy of the notice and the 2006 Dispute Resolution Policy. This 2006 Dispute Resolution Policy remained in effect until it was revised in 2011.

The 2011 revised arbitration agreement was entitled "Dispute Resolution Policy & Procedure." This 2011 Dispute Resolution Policy & Procedure was the arbitration agreement in effect at the time FirstLight terminated Loya in 2013. The 2011 agreement provided that it was governed by the Federal Arbitration Act,[2] and it required arbitration of "all disputes relating to or arising out of an employee's employment … including claims regarding termination of employment[,]" unless explicitly excluded from coverage.[3] The agreement further stated that it applied "to disputes regarding the validity or enforceability of the Policy."

The agreement stated that FirstLight agreed to be bound to its mandatory arbitration terms, and that "[a]ny employee accepting or continuing employment, also agrees to be bound by the Policy as a condition of his or her employment." Immediately thereafter, the agreement stated: "An employee must sign an acknowledgement of receipt of this policy and agree to be bound by its provisions. Failure to agree to these terms will result in the termination of employment."

The final page of the 2011 agreement was entitled "Dispute Resolution Mutual Agreement" and stated: "Your decision to accept employment or to continue employment with FirstLight FCU constitutes agreement on your part to be bound by this Policy[.]" The final page contained a signature block for FirstLight, which was signed by its President and CEO. It also

---

[2] Parties may expressly agree to arbitrate under the Federal Arbitration Act. *In re AdvancePCS Health L.P.,* 172 S.W.3d 603, 605-06 & n.3 (Tex. 2005) (orig. proceeding) (per curiam). Although Loya opposes arbitration generally, she does not contest the application of the FAA. *See In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding).

[3] The agreement noted that: "Examples of the type of disputes or claims covered by this policy include claims for wrongful termination of employment, breach of contract, employment discrimination, harassment or retaliation under the Americans With Disabilities Act, the Age Discrimination In Employment Act, the Texas Labor Code or the New Mexico Human Rights Act and any state or local discrimination laws, tort claims, defamation claims, or any other legal claims and causes of action recognized by local, state or federal law or regulations."

4

contained a signature block for the employee, which was preceded by the statement: "I have received a copy of the Dispute Resolution Policy & Procedures [sic] and agree to abide by the terms contained within."

It is undisputed that Loya did not physically sign her name in this signature block. There was evidence, however, that Loya had received notice of the 2011 agreement by electronic means and had acknowledged its receipt electronically. FirstLight's employees were able to securely access employment and benefits information through a secure web-portal, using a unique employee log-in and an employee-generated password.[4] In 2011, FirstLight began distributing, and requiring employees to acknowledge and agree to, its human resources policies and workplace guidelines, including the Dispute Resolution Policy & Procedure, electronically through the secure portal. Loya acknowledged receipt of FirstLight's 2011 Dispute Resolution Policy & Procedure on November 29, 2011, through this electronic notification and acknowledgment system. In doing so, Loya certified online that she had read the policy. The electronic notification and acknowledgment system informed employees to: "Please take a moment to read the attached policy. Once you have read and understood [the] policy online you are required to print the last page, sign and date, and return [the] completed [form]." It is undisputed that Loya did not print, sign, and return the online version of the 2011 Dispute Resolution Policy & Procedure.

**Analysis**

Loya contended in the trial court that the arbitration agreement was unenforceable because she had not signed the arbitration agreement and could not be bound to arbitrate by her conduct. Loya also argued that, in any event, the agreement was illusory and her claims did not fall within

---

[4] FirstLight began outsourcing certain "back office" payroll functions to a third-party payroll service in 2005, and in 2011, expanded the scope of those services to include human resources support. The human resources functions were accomplished through software FirstLight purchased and licensed from the service provider.

5

the scope of the agreement. In its first two points on appeal, FirstLight argues that all of these issues should have gone to the arbitrator because the 2011 agreement contained a delegation clause requiring the arbitration of "disputes regarding the validity or enforceability" of the agreement. We agree in part.

### *The Effect of the Delegation Clause*

Ordinarily, the trial court retains the power to rule on gateway issues such as the validity and enforceability of an arbitration agreement. *See Nazareth Hall Nursing Ctr. v. Melendez*, 372 S.W.3d 301, 305 (Tex.App. – El Paso 2012, no pet.); *see also In re Morgan Stanley & Co.,* 293 S.W.3d 182, 190 (Tex. 2009) (orig. proceeding) (any claim that questions the existence of an arbitration agreement is a question for the court); *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding) (generally, courts not arbitrators consider gateway issues such as whether a valid arbitration clause exists); *In re Rubiola,* 334 S.W.3d 220, 224–25 (Tex. 2011) (orig. proceeding) (whether a non-signatory can compel arbitration depends on existence of valid agreement between specific parties and is therefore a gateway matter for the court to determine).

It is well-settled, however, that parties can agree to delegate to the arbitrator the power to resolve gateway issues regarding the validity and enforceability of the arbitration agreement; in that event, the entire matter of arbitrability is transferred from the trial court to the arbitrator. *Iturralde*, 387 S.W.3d at 793; *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S.Ct. 2772, 2777, 177 L.Ed.2d 403 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability' … or whether their agreement covers a particular controversy."). Thus, an arbitration agreement that "clearly and unmistakably" shows the intent to assign gateway issues to the arbitrator is fully enforceable, and questions that are normally

6

decided by the trial court will be submitted to the arbitrator. *Iturralde*, 387 S.W.3d at 793; *see*

*AT&T Techs. Inc. v. Commc'ns Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648

(1986) (unless the parties clearly and unmistakably provide otherwise, the question of whether the

parties agreed to arbitrate is to be decided by the court, not the arbitrator); *In re Weekley Homes,*

180 S.W.3d at 130 ("Under the FAA, absent unmistakable evidence that the parties intended the

contrary, it is the courts rather than arbitrators that must decide 'gateway matters' such as whether

a valid arbitration agreement exists.").

In *Iturralde*, we held that a delegation clause providing that the parties agreed to arbitrate

"any and all claims challenging the validity or enforceability of this Agreement [in whole or in

part]" clearly and unmistakably provided for issues of validity and enforceability to be determined

by the arbitrator. *Iturralde*, 387 S.W.3d at 793. Likewise, the 2011 arbitration agreement

provides that it "also applies to disputes regarding the validity or enforceability of the Policy." As

we concluded in *Iturralde*, we conclude that the delegation clause in the 2011 arbitration

agreement clearly and unmistakably provides that the issues of validity and enforceability are to be

decided by the arbitrator and not the court. Now, we must determine the reach of the delegation

clause in the present case.

*The Arbitrator Determines Whether the Agreement is Illusory*

Loya contends the arbitration agreement is unenforceable because the modification

provision contained in the arbitration agreement renders the agreement illusory. In *Iturralde*, we

concluded that the determination whether the arbitration agreement was illusory was a matter of

"validity and enforceability" that had been delegated to the arbitrator. *Id*. We recognized that,

under the United States Supreme Court's decision in *Rent-A-Center*, our analysis depended on the

7

kind of challenge being made. *Id.* If the challenge related to the arbitration agreement as a whole, and the agreement contained a provision delegating issues of arbitrability to the arbitrator, then the challenge must be directed to arbitration. *Id.* Only if the challenge was specific to the issue of delegation, would the issue be properly decided by the trial court. *Id.*

As in *Iturralde*, the arbitration agreement here clearly and unmistakably provides that issues of validity and enforceability go to the arbitrator. And, like the plaintiff in *Iturralde*, Loya challenges the entire arbitration agreement based on the assertion that the modification provision contained in the agreement renders the agreement illusory. Accordingly, our analysis in *Iturralde* controls. Because there is a specific delegation provision in the 2011 arbitration agreement, and because Loya challenges the agreement as a whole rather than the specific delegation provision, the issue whether the agreement is illusory is a matter for the arbitrator.

*The Trial Court Determines the Scope of the Agreement*

Whether Loya's claims fall within the scope of the agreement is a different matter. While parties may agree to delegate issues concerning the scope of an arbitration agreement to the arbitrator, the scope of an arbitration agreement is a separate issue from its validity and enforceability. A "party seeking to compel arbitration must establish *both* (1) the existence of a valid enforceable agreement to arbitrate and (2) that the claims at issue fall within the scope of that agreement." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 525 (Tex. 2015) (emphasis in original) (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001)). An assertion that claims do not fall within the scope of an agreement is not a challenge to the validity and enforceability of arbitration agreement. It is a challenge to how far that agreement extends. Moreover, we must be mindful that delegation clauses must "clearly and unmistakably" delegate

8

issues to the arbitrator. *See Iturralde*, 387 S.W.3d at 793 ("gateway questions which are normally decided by a court will be submitted to an arbitrator where the agreement was clear and unmistakable") (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

The delegation clause here does not state that issues concerning the scope of the agreement go to the arbitrator. Rather, it limits the delegation of gateway issues to "disputes regarding the validity or enforceability of the Policy." In *Iturralde*, the delegation clause specified that arbitration included claims challenging not only "the validity or enforceability of this Agreement" but also claims challenging "the applicability of this Agreement to a particular dispute or claim." 387 S.W.3d at 789; *see also Seven Hills Commercial, LLC v. Mirabal Custom Homes, Inc.*, 442 S.W.3d 706, 716 (Tex.App. – Dallas 2014, pet. denied) (where the parties agreed to arbitrate any "dispute, claim or controversy arising out of or relating to this Agreement or breach, termination, enforcement, interpretation or validity thereof, *including the determination of the scope or applicability of this Agreement to arbitrate*") (emphasis added); *Douglas v. Regions Bank*, 757 F.3d 460, 462 n.3 (5th Cir. 2014) (where the parties agreed to arbitrate any dispute, claim, or controversy between them, "*including the validity, enforceability, or scope of this Arbitration provision*") (emphasis in original). In contrast, the delegation clause in the 2011 arbitration agreement does not include any language delegating a challenge to the scope of the agreement to the arbitrator.

We conclude therefore that the 2011 arbitration agreement does not clearly and unmistakably delegate the issue of the scope of the agreement to the arbitrator. Thus, whether Loya's claims fell within the scope of the 2011 arbitration agreement was an issue for the trial

9

court.

*The Trial Court Determines Whether an Agreement to Arbitrate Exists*

Similarly, we conclude Loya's challenge to the very existence of an agreement to arbitrate – as opposed to its enforceability or validity – was also an issue for the trial court to decide.

As an initial matter, we note it is unclear whether a challenge to the very existence of an agreement to arbitrate can ever be delegated to an arbitrator, or whether that challenge must always be decided by the court, even if the arbitration agreement provides that issues of validity, enforceability, or contract formation must go to an arbitrator. We have previously stated, albeit in a case not involving a delegation clause, that "when the very existence of an arbitration agreement is challenged as opposed to its continued validity or enforcement, it is a matter for the court" because that contention "is an argument directed at the actual making of the contract[.]" *Nazareth Hall Nursing Ctr.*, 372 S.W.3d at 306 (citing *In re Morgan Stanley & Co.*, 293 S.W.3d 182, 189 (Tex. 2009)). And, we have also recognized in delegation clause cases, at least implicitly, that questions of contract formation are for the court to decide. For instance in *Iturralde*, we compelled arbitration under a delegation clause, but did so only because the agreement bore "Iturralde's signature evidencing her assent to its terms[.]" 387 S.W.3d at 793. And, recently in *Lucchese Boot Co. v. Rodriguez*, __S.W.3d__, 2015 WL 4571555 (Tex.App. – El Paso July 29, 2015, no pet. h.), we noted that: "If the arbitration clause sweeps broadly enough to subsume gateway issues into an arbitral dispute, *and there is evidence that both parties agreed to the covenants*, then the trial court should compel arbitration and leave issues of validity and enforceability to the arbitrator." *Id*. at *3 (emphasis added).

Some courts have explicitly determined that the parties must first *agree* to arbitrate

10

arbitrability, before any gateway issues can be considered by the arbitrator. Accordingly, unless an agreement to arbitrate first comes into existence, the parties have not agreed to submit any issues to the arbitrator, much less contract formation issues. *See, e.g., Denar Restaurants, LLC v. King*, No. 02-13-00142-CV, 2014 WL 2430854, at *6 (Tex.App. – Fort Worth May 30, 2014, no pet.) (mem. op., not designated for publication) (recognizing that questions of arbitrability can be delegated to the arbitrator, but concluding that "the parties did not agree to submit any issues to the arbitrator" because "the Agreement never came into existence by its terms"); *see also Vallejo v. Garda CL Southwest, Inc.,* No. H-12-0555, 2013 WL 391163, at *7 (S.D. Tex. Jan. 30, 2013) ("Challenges to the existence – as opposed to the enforceability or validity or scope – of an agreement to arbitrate, are for a court to decide.") (citing *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 (5th Cir. 2011)); *cf. Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 219 (5th Cir. 2003) (recognizing the conundrum that: "[W]here the very existence of an agreement is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed. Such an outcome would be a statement that the arbitrator *never* had any authority to decide the issue.") (emphasis in original).

Several cases not involving delegation clauses, however, indicate that even issues as to contract formation can be delegated to the arbitrator. *See, e.g., Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299, 130 S.Ct. 2847, 2858, 177 L.Ed.2d 567 (2010) ("absent a valid provision specifically committing such disputes to an arbitrator," the contract-formation issue was for the court to decide); *In re Morgan Stanley & Co.*, 293 S.W.3d at 189 (holding that mental capacity to enter into an arbitration agreement is an issue for the court to decide, but noting that "we have concluded that whether an arbitration agreement binds a nonsignatory is a gateway

matter to be determined by the court, rather than the arbitrator, *unless the parties clearly and unmistakably provide otherwise*") (emphasis added) (citing *In re Weekley Homes, L.P.*, 180 SW.3d at 130).

We need not decide this difficult issue in the present case, however, because the delegation clause in the 2011 agreement delegated only issues of "validity or enforceability." We agree with Justice Willett about "the murky line between contract formation and contract validity." *In re Morgan Stanley & Co.*, 293 S.W.3d at 192 (J. Willett, concurring). We think it is this "murky line" that makes it all the more important that a delegation clause clearly, specifically, and unmistakably delegate contract formation to the arbitrator. When it comes to delegation, we believe that challenges to contract formation – including whether the plaintiff ever signed the contract or, if not, can nonetheless be bound under principles of contract law – are different from challenges to validity or enforceability. We find that delegating "validity or enforceability" does not clearly and unmistakably delegate to the arbitrator a challenge to the issue of contract formation. *Cf. Rent-A-Center*, 561 U.S. at 66, 130 S.Ct. at 2775 (where the arbitration provision provided that the arbitrator decide not only all disputes relating to the interpretation, applicability, enforceability of the agreement, but also all disputes "relating to the … formation of this Agreement"). We therefore conclude the delegation clause in the present case, which provides that the arbitrator determine issues concerning the "validity or enforceability" of the agreement, does not "clearly and unmistakably" delegate the issue of contract formation to the arbitrator.

We thus proceed to determine whether Loya was bound to arbitrate under the terms of the 2011 arbitration agreement, and if so, whether her claims fell within the scope of that agreement.

***Agreement through Conduct***

12

We must determine then whether Loya was required to arbitrate her claims when she never signed the signature block on the last page of the 2011 arbitration agreement. Loya correctly points out that typically, a party manifests its assent by signing an agreement. *Rachal v. Reitz*, 403 S.W.3d 840, 845 (Tex. 2013). Loya also correctly notes that, as we have recently stated: "Under standard contract principles, the presence or absence of a party's signature on a written contract is relevant to determining whether there was an intent for an agreement to be binding;" and "therefore, the fact that a party has signed a contract creates a 'strong presumption' that the party has assented to the terms of an agreement." *Wright*, 2015 WL 4389582, at *9. But, as we have also noted, "the absence of a party's signature does not necessarily destroy an otherwise valid contract and is not dispositive of the question of whether the parties intended to be bound by the terms of a contract." *Id.*

Moreover, the Texas Supreme Court has repeatedly held that "neither the FAA nor Texas law requires that arbitration clauses be signed, so long as they are written and agreed to by the parties." *In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009) (orig. proceeding); *In re AdvancePCS Health, L.P.,* 172 S.W.3d 603, 606 n.5 (Tex. 2005) (orig. proceeding) (per curiam) (noting, however, that Texas Arbitration Act requires signatures in certain limited circumstances); *see also In re Macy's Tex., Inc.,* 291 S.W.3d 418, 419 (Tex. 2009) (orig. proceeding) (per curiam) (observing that "[t]he FAA contains no requirements for the form or specificity of arbitration agreements except that they be in writing; it does not even require that they be signed").

This Court has similarly noted that the Federal Arbitration Act does not require that the agreement be signed by the parties. *Wright*, 2015 WL 4389582, at *10; *In re Bunzl USA, Inc.* 155 S.W.3d 202, 210 (Tex.App. – El Paso 2004, orig. proceeding) ("Although the FAA requires an

13

arbitration agreement to be written, it does not expressly require the agreement to be signed by the parties."). We have also held that the presence of a signature block in an arbitration agreement, standing alone, is insufficient to establish that a party's signature is a condition precedent to the enforceability of the agreement. *Wright*, 2015 WL 4389582, at *12.

In the absence of a signature on a contract, a court may look to other evidence to establish the parties' assent to the terms of the contract. *In re Bunzl USA, Inc.,* 155 S.W.3d at 209; *see also Lujan v. Alorica,* 445 S.W.3d 443, 448–49 (Tex.App. – El Paso 2014, no pet.) ("[w]hen a party's signature is absent, other evidence must be presented to prove the party unconditionally and mutually assented to the terms of the contract"); *Tukua lnv., LLC v. Spenst,* 413 S.W.3d 786, 794 (Tex.App. – El Paso 2013, pet. denied) (in the absence of a signature on a contract, we look to other evidence to establish whether the non-signatory party may be bound by the contract). And, other evidence of an intent to be bound in the absence of a signature includes the party's conduct. *Wright*, 2015 WL 4389582, at *12.

In the present case, it is uncontroverted that Loya was notified electronically of the 2011 arbitration agreement and that she electronically acknowledged receipt of that notice and the arbitration agreement itself. The 2011 arbitration agreement specifically notified Loya that "[a]ny employee accepting or continuing employment, also agrees to be bound by the Policy as a condition of his or her employment," and that "[y]our decision to accept employment or to continue employment with FirstLight FCU constitutes agreement on your part to be bound by this Policy[.]" It is also undisputed that Loya continued working after receipt of this notice. This case thus falls squarely within the rule announced in *In re Halliburton Co.*, 80 S.W.3d 566, 568-69 (Tex. 2002) (orig. proceeding), that when an employer notifies an at-will employee of an

14

arbitration agreement and informs the employee that continuing to work after notice constitutes the employee's agreement to the arbitration agreement, the employee's conduct in continuing to work is acceptance of the terms of the agreement as a matter of law. *Id.* (when the employee reported to work after being notified of the arbitration agreement, he accepted the offer, and both the employer and employee became bound to arbitrate any disputes between them). The *Halliburton* rule applies even when, as here, there is no evidence the employee signed the acknowledgment form containing a signature block for the employee to acknowledge notice and receipt of the agreement. *See In re Dillard Dept. Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006) (orig. proceeding) (per curiam) (at-will employee who received notice of the modified employment terms requiring arbitration and then continued working, accepted those terms as a matter of law despite the lack of any evidence the employee signed the acknowledgment form).

Loya argues that the *Halliburton* rule does not apply because in *Halliburton* the employer *unequivocally* notified the employee that continued employment would constitute acceptance of the arbitration agreement. *See Halliburton*, 80 S.W.3d at 568-69 ("On this record we conclude that Haliburton's offer was unequivocal and that Myers' conduct was an acceptance of that offer."). Loya notes that in *Halliburton,* the Supreme Court distinguished its prior decision in *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227 (Tex. 1986), "in which the written notice was contradicted by other written or oral communications between the employer and the employee." *Halliburton*, 80 S.W.3d at 569; *see Hathaway*, 711 S.W.2d at 228-29 (oral statements "not to worry" about a proposed change to new, lower commission sales rates contradicted an earlier oral statement that salesman would have to "accept it or leave").

15

Loya claims that similar contradictions exist here, and thus FirstLight's notice was equivocal and her continued employment was not acceptance of the arbitration agreement. *See Hathaway*, 711 S.W.2d at 229 (indicating that employer must unequivocally notify employee of the changes before the employee's continuing employment will constitute acceptance as a matter of law). In particular, Loya notes that while the 2011 arbitration agreement states in two places that continued employment constitutes agreement to the arbitration agreement, it also states: "An employee must sign an acknowledgment of receipt of this policy and agree to be bound by its provisions. Failure to agree to these terms will result in the termination of employment." She also points out that the electronic acknowledgment instructions required the employee to print, sign, and date the last page of the agreement and return it to FirstLight. Loya contends that this additional language makes this case similar to our decision in *In re Bunzl*, in which we held that the presence of an unsigned signature block, plus a requirement in the agreement that any modifications to the arbitration agreement must be in writing and signed by the parties, was evidence that the parties did not intend to be bound until both parties signed the agreement. 155 S.W.3d at 211; *see also Scaife v. Associated Air Ctr., Inc.*, 100 F.3d 406, 410-11 (5th Cir. 1996) (where the presence of a signature block and a signed-modification requirement clause as in *Bunzl*, plus a clause indicating that part payment was due upon signing, clearly evidenced the parties' intent that the agreement be signed before it could be enforced).

We think a crucial distinction exists here that makes *Hathaway, Bunzl, and Scaife* inapplicable. Here, the arbitration agreement explicitly notified Loya that continued employment would constitute acceptance. In order for Loya to prevail, we would necessarily be forced to read that provision out of the agreement and render it meaningless. We have repeatedly held that

16

arbitration agreements are "creatures of contract," and that we must apply "standard contract principles to determine whether a valid arbitration agreement exists." *Wright*, 2015 WL 4389582, at *9 (quoting *Bunzl*, 155 S.W.3d at 209). Standard contract principles dictate that in construing a contract, the court "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co of Am.*, 341 S.W.3d 323, 333 (Tex. 2011) (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)); *see also El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012) (same).

The agreement clearly provides that Loya, through her continued employment, agreed to be bound by the arbitration agreement as a condition of her employment. We cannot simply ignore that provision. We must construe the agreement to harmonize that provision with the subsequent provisions (that an "employee must sign an acknowledgment of receipt of this policy and agree to be bound by its provisions," and that "[f]ailure to agree to these terms will result in the termination of employment"), and give effect to them all. Accordingly, we do not construe the subsequent provisions to require Loya's signature for her to be bound to arbitrate, which would render the previous phrase meaningless. Rather, we construe the subsequent provisions as an alternative method of agreement and termination provision. The subsequent provisions simply provide that Loya may also agree to arbitrate through her signature and explain that Loya could be terminated if she refuses to sign. Indeed, the necessity for such an alternative agreement and termination provision is made apparent by this very case. If FirstLight had utilized the threat of termination in order to require Loya to physically sign the acknowledgment, it could have more easily avoided this lawsuit and appeal to enforce its rights under the arbitration agreement.

17

Further, to make a signature a condition precedent to enforcement of a contract – including an arbitration agreement – the agreement must clearly and explicitly require a signature before it becomes binding. *See Wright*, 2015 WL 4389582, at \*10; *Lujan*, 445 S.W.3d at 448–49 (when a contract expressly requires a signature prior to it becoming binding, the existence of the instrument is destroyed by the other party's failure to sign the instrument); *W. Texas Hospitality, Inc. v. Enercon Int'l, Inc.*, No. 07–09–0213–CV, 2010 WL 3417845, at \*5 (Tex.App. – Amarillo Aug. 31, 2010, no pet.) (mem. op., not designated for publication) (agreement expressly required the signature of both parties and stated that it would be "binding upon all parties the date [Enercon] dates and signs the duplicate originals, which date shall be the 'execution date of Agreement.'"); *see also Copeland v. KB Home,* No. Civ.A.3:03–CV–227–L, 2004 WL 1778949, at \*2–3 (N.D.Tex. Aug. 4, 2004) (the "plain, unequivocal language of the arbitration provision in question establishes that the parties intended and expected the Agreement to be initialed and signed as a condition precedent for the formation of an arbitration agreement," and the employer's failure to do so rendered the agreement unenforceable). The 2011 arbitration agreement does not clearly and explicitly require Loya's signature before it can be enforced. Rather, it clearly and explicitly informs FirstLight's employees that continued employment constitutes their agreement to be bound by the arbitration agreement. Accordingly, we conclude that despite the lack of her signature, Loya became bound by the 2011 arbitration agreement by continuing her employment after receiving electronic notice that her continued employment was agreement to its terms.

### *Loya's Claims Fall Within the Scope of the Agreement*

Having concluded that a valid, enforceable arbitration exists, a strong presumption favoring arbitration arises. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003);

18

*Iturralde*, 387 S.W.3d at 790. Because a presumption exists favoring agreements to arbitrate under the FAA, courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). Unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, a court should not deny arbitration. *Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 899 (Tex. 1995) (orig. proceeding); *BBVA Compass Inv. Solutions, Inc. v. Brooks*, 456 S.W.3d 711, 718 (Tex.App. – Fort Worth 2015, no pet.).

Loya sued FirstLight complaining her termination was wrongful and asserting claims for discrimination and retaliation under the Texas Commission on Human Rights Act. *See* TEX. LAB. CODE Ann. § 21.051 (West 2015). The scope of the 2011 arbitration agreement was broad. It required arbitration of "all disputes relating to or arising out of an employee's employment … including claims regarding termination of employment[,]" unless explicitly excluded from coverage. The agreement noted that examples of the type of disputes or claims covered by this policy included "claims for wrongful termination of employment" including "employment discrimination … or retaliation under the … the Texas Labor Code[.]" It is apparent that all of Loya's claims fell within the scope of the arbitration agreement, unless they were explicitly excluded.

Loya does not discuss the scope issue on appeal, but in the trial court, she asserted that her claims were excluded from coverage by the following exclusion, because she had first filed a charge with the EEOC:

Charges before the Equal Employment Opportunity Commission … are not subject to exclusive review by arbitration. This means that an employee may file such

19

claims with the appropriate agency that has jurisdiction over them if they wish, regardless of whether they decide to use arbitration to resolve them. Employees must first exhaust any administrative procedures provided by any statute which employee claims the FirstLight FCU has violated. However, once the administrative agency completes its processing of the action against the FirstLight FCU, employees must use arbitration if they wish to pursue further legal rights, rather than filing a lawsuit on the action.

As is apparent, Loya's claims were not within the scope of arbitration when they were pending before the EEOC. But once the EEOC completed "its processing of the action," employees like Loya were explicitly required to "use arbitration if they wish to pursue further legal rights, rather than filing a lawsuit on the action." The record clearly shows, and Loya admits in her pleadings, that after she filed a charge of discrimination with the EEOC, the Texas Workforce Commission (through its work sharing agreement with the EEOC) subsequently issued a right to sue letter. As a matter of law, therefore, the exclusion covering EEOC proceedings did not apply because the administrative agency had completed its processing of the action, and Loya's claims as alleged in her lawsuit fell within the scope of the 2011 arbitration agreement.

**CONCLUSION**

The trial court abused its discretion in refusing to compel arbitration under a valid and enforceable arbitration agreement. Accordingly, the trial court's order denying FirstLight's motion to compel arbitration is vacated, and the case is remanded to the trial court with instructions to enter an order granting the motion to compel arbitration and staying all proceedings pending arbitration.

STEVEN L. HUGHES, Justice

October 7, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

20