COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| SOUTHWEST CONVENIENCE STORES, LLC, D/B/A 7-ELEVEN #655, ALON USA, LP, DELEK US HOLDINGS, INC. D/B/A DELEK US, AND JORGE MEZA | § | No. 08-21-00055-CV |
| | § | Appeal from the |
| **Appellants,** | § | 327th Judicial District Court |
| v. | § | of El Paso County, Texas |
| | § | (TC# 2019DCV1975) |
| REMIN IGLESIAS ON BEHALF OF THE ESTATE OF ARBIN IGLESIAS, DECEASED, CARLOS ROLANDO IGLESIAS CANO AND BLANCA MANUELA HOLGUIN GOMEZ, INDIVIDUALLY AND AS WRONGFUL DEATH BENEFICIARIES OF ARBIN IGLESIAS, | | |
| **Appellees.** | | |

## **O P I N I O N**

This is an interlocutory appeal of an arbitration order in a wrongful death case. Appellants Southwest Convenience Stores, LLC, Alon USA, LP, Delek US Holdings, INC., and Jorge Meza appeal the trial court's order denying in part their motion to compel arbitration, and the trial court's refusal to compel a claim for loss of consortium. Because the trial court erred by deciding the arbitrability of the loss of consortium claim—a power delegated to the arbitrator—we reverse and remand.

*Factual and Procedural Background*

Arbin Iglesias was the son of Carlos Iglesias and Blanca Gomez. Through Iglesias's employment with Appellants, he was a participant in Appellants' Occupational Injury Benefit Plan (the Benefit Plan.). The Benefit Plan included a binding arbitration agreement (the Agreement) controlled by the Federal Arbitration Act (the FAA). Iglesias signed an arbitration acknowledgement form on December 6, 2018, during his employee training.

On February 20, 2019, Iglesias was murdered while working the night shift as a sales associate for Appellants. After his death, Appellees filed a wrongful death action alleging negligence, gross negligence, and premises liability, in which they also requested damages for loss of consortium. Appellants filed a motion to compel arbitration. The trial court referred all of Appellees' claims to arbitration except for loss of consortium, which it stated was "one that is owned and not derivative." Appellants filed this interlocutory appeal, challenging only the trial court's refusal to refer the loss of consortium claim to arbitration along with Appellees' other claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 ("In a matter subject to the Federal Arbitration Act, a person may take an appeal or writ of error to the court of appeals from the judgment or interlocutory order of a district court . . . ."). Appellees did not, and could not, file a cross-appeal challenging the trial court's order referring their remaining claims to arbitration.

*Arguments of the Parties*

First, Appellants contend that because the trial court referred some of Appellees' claims to arbitration, it was bound to refer all of Appellees' claims, including the loss of consortium claim. Appellees respond that Appellants did not meet their burden at trial to show the existence of a valid and enforceable agreement. Because Appellees did not, and could not, challenge on appeal the trial court's order of referral to arbitration, we decline to review the trial court's implied finding

2

of validity of the Agreement and the resulting referral of the remainder of Appellees' claims. Instead, we focus solely on the trial court's decision not to also refer the loss of consortium claim to arbitration, and we review the Agreement only to determine whether the language broadly delegated the determination of arbitrability of claims to the arbitrator.

Second, Appellants contend that the trial court erred because a loss of consortium claim is a type of derivative wrongful death claim for which arbitration is required under the language of the Agreement, to which Appellees respond that the loss of consortium claims are distinct from a wrongful death action and are thus properly excluded from arbitration. Because we find that the arbitrator had the exclusive authority to make that decision under the delegation clause, we decline to review the merits of the trial court's ruling on the issue.

Third, we recognize that Appellees are barred by the FAA and Texas procedural rules from appealing an interlocutory order compelling arbitration. *See* TEX. CIV. PRAC. & REM. CODE § 51.016 ("In a matter subject to the Federal Arbitration Act, a person may take an appeal or writ of error to the court of appeals from the judgment or interlocutory order of a district court, county court at law, or county court under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16."); *see also* TEX. CIV. PRAC. & REM. CODE § 171.098 (listing orders a party may appeal, which does not include a grant of an application to compel arbitration). Thus, we recognize that Appellees could not appeal the grant of the motion to compel.[1]

---

[1] We decline to consider Appellees' cross points seeking additional relief beyond that which was granted by the trial court. *See* TEX. R. APP. P. 25.1(c) ("A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal."); *see also* TEX. R. APP. P. 38.1–.2 (providing the rules for appellate briefs and examples of when an appellee must assert cross-points—none of which are applicable to the case at hand). These issues were not properly raised and perfected in a cross appeal, and we do not address the merits of claims not properly before this Court. However, as our later analysis will show, these types of questions related to enforceability or the allegedly illusory nature of the Agreement are subject to a delegation clause in the Agreement and would thus be beyond the reach of this Court's jurisdiction—even if properly raised.

*Standard of Review*

We review a trial court's decision to grant or deny a motion to compel arbitration for abuse of discretion. *Firstlight Federal Credit Union v. Loya*, 478 S.W.3d 157, 160 (Tex. App.—El Paso 2015, no pet.). A party seeking to compel arbitration must establish two things: (1) the existence of a valid arbitration agreement, and (2) that the claims asserted in the case are within the scope of the agreement. *Ridge Natural Resources, L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 117 (Tex. App.—El Paso 2018, no pet.). A court abuses its discretion when it refuses to compel arbitration once a party establishes the existence and scope of the agreement. *Lucchese Boot Company v. Rodriguez*, 473 S.W.3d 373, 380 (Tex. App.—El Paso 2015, no pet.). We defer to the trial court's factual findings if they are supported by the evidence, but we review the trial court's legal determinations de novo. *In re Labatt food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). Whether a disputed claim falls within the scope of an arbitration agreement is a question of law that we review de novo. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018).

Generally, the trial court has the power to rule on gateway issues such as the validity and enforceability of an arbitration agreement. *Firstlight Federal Credit Union*, 478 S.W.3d at 163. However, as this Court has previously recognized, when an arbitration clause "sweeps broadly enough to subsume gateway issues [regarding contract validity and scope] into an arbitral dispute, and there is evidence that both parties agreed to the covenants, then the trial court should compel arbitration and leave issues of validity and enforceability to the arbitrator." *Lucchese Boot Company*, 473 S.W.3d at 382.

4

*Relevant Contract Language*

To begin our analysis, we set out the following relevant excerpts from Appellants' Benefit

Plan, which contains the Agreement as Appendix A:

> The Employer has adopted a **mandatory company policy** requiring that you comply with the following arbitration requirements. . . .
>
> **Arbitration Requirement**
> All claims or disputes described below that cannot otherwise be resolved between the Employer and you are subject to **final and binding** arbitration. **This binding arbitration is the only method for resolving any such claim or dispute.**
>
> **Claims Covered By This Arbitration Requirement**
> This arbitration requirement applies to:
> ➢ Any legal or equitable claim or dispute relating to enforcement or interpretation of the arbitration provision in a Receipt, Safety Pledge and Arbitration Acknowledgement form or this arbitration requirement; and
> ➢ Any legal or equitable claim by or with respect to you for any form of physical or psychological damages, harm or death which relates to an accident, occupational disease, or cumulative trauma (including, but not limited to, claims of negligence or gross negligence or discrimination; and claims for assault, battery, negligent hiring/training/supervision/retention, or emotional distress, retaliatory discharge, or violation of any other non criminal federal, state or other governmental common law, statute, regulation or ordinance in connection with a job-related injury, regardless of whether the common law doctrine was recognized or whether the statute, regulation or ordinance was enacted before or after the effective date of this booklet).
> This includes all claims listed above that you have now or in the future against the Employer, its officers, directors, owners, employees, representatives, agents, subsidiaries, affiliates, successors, or assigns.
> The determination of whether a claim is covered by these provisions will also be subject to arbitration under this arbitration requirement. **Neither you nor the Employer will be entitled to a bench or jury trial on any claim covered by this arbitration requirement. This arbitration requirement applies to you without regard to whether you have completed and signed a Receipt, Safety Pledge and Arbitration Acknowledgement form or other similar written receipt**. These provisions also apply to any claims that may be brought by your spouse, children, parents, beneficiaries, Representatives, executors, administrators, guardians, heirs or assigns (including, but not limited to, any survival or wrongful-death claim). This binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute. . . .

➢ The arbitrator will apply the substantive law of Texas (other than the Texas General Arbitration Act), or federal law, or both, depending upon the claims asserted. **The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this agreement including, but not limited to, any claim that all or any part of this agreement is void or voidable.** . . . .

➢

The Federal Arbitration Act will govern the interpretation, enforcement, and proceedings under this arbitration requirement. . . .

*Arbitrability—Scope of the Agreement*

"The scope of this Court's review of the trial court's decision is constrained by the arguments raised by the parties both in the trial court and on appeal." *Ridge Nat. Res., L.L.C.*, 564 S.W.3d at 118. This cuts against Appellees in two ways: first, because they are foreclosed by statute from challenging the trial court's order referring their other claims to arbitration, and second because they failed to specifically challenge the arbitrability of the loss of consortium claim at the trial court.

If the party seeking to compel arbitration proves the existence of a valid arbitration agreement, any doubts as to whether a claim falls within the scope of the agreement must be resolved in favor of arbitration. *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (per curiam). This presumption applies to all of Appellees' claims in this case—including the loss of consortium claim.

Our Court has once before held that a trial court errs when it refuses to compel arbitration on a ground not raised by the party resisting arbitration. *See ReadyOne Industries, Inc. v. Flores*, 460 S.W.3d 656, 663 (Tex. App.—El Paso 2014, pet. ref'd). In its briefing, Appellants' note that Appellees "never asserted in their response [to the motion to compel arbitration] that the claims for loss of consortium" were not subject to the Agreement. Our review of the record confirms

6

Appellants' assertion.[2] In Appellees' opposition motion, they contended that Appellants failed to establish the existence of any agreement and raised contract formation and enforcement defenses—contending that the Agreement was unconscionable and illusory. None of Appellees' pleadings below suggest that the loss of consortium claim was outside the scope of the Agreement. Instead, Appellees' pleadings and response to the motion to compel only contested the existence of the Agreement as a whole. By contrast, Appellants' pleadings asserted that the Agreement was formed, and that the determination of whether a claim is covered by the Agreement was subject to arbitration.

Because Appellees did not assert below that the loss of consortium claim was outside the scope of the Agreement, we conclude that the trial court erred in separately determining the arbitrability of that individual claim, rather than deferring to the language of the Agreement and its broad delegation of power to the arbitrator, as described below.

But even had Appellees raised and Appellants responded below on the issue of the arbitrability of the loss of consortium claim, the trial court erred in deciding this issue rather than referring the matter to the arbitrator for determination.

As stated above, once the party seeking to compel arbitration proves the existence of a valid arbitration agreement, any doubts as to whether a claim falls within the scope of the agreement must be resolved in favor of arbitration. *See Prudential Sec. Inc.*, 909 S.W.2d at 899. Arbitration is a creature of contract, and parties may agree to send issues of arbitrability to the arbitrator. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 121 (Tex. 2018) (citing *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010)). When the parties have agreed to send such issues to an arbitrator, the courts "have no discretion but to compel arbitration." *Id.*

---

[2] In fact, neither party requested nor even argued to the trial court that the loss of consortium claim should be carved out of the referral to arbitration. The first indication that such might occur was the trial court's order doing just that.

7

Although neither party expressly discusses the scope of the delegation clause and its effect on the arbitrability of the loss of consortium claim in their appellate briefings, Appellant cited the language of the Agreement in the underlying motion to compel arbitration, which states, in part: "The determination of whether a claim is covered by these provisions will also be subject to arbitration under this arbitration requirement." "The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this agreement including, but not limited to, any claim that all or any part of this agreement is void or voidable."

We find that the language in the Agreement "clearly and unmistakably" shows the intent to assign issues of arbitrability, a question that is normally decided by the court, to an arbitrator. *See e.g.*, *Firstlight Federal Credit Union*, 478 S.W.3d at 164. The broad delegation clause compelled the trial court to refer the loss of consortium claim to the arbitrator for determination of arbitrability. *See e.g.*, *Transcore Astra Group S.A. v. Petrobas America Inc.*, 650 S.W.3d 462, (Tex. 2022) (citing *Henry Schein, Inc. v. White Sales, Inc.*, 139 S.Ct. 524, 530 (2019) ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator.")). Thus, right or wrong in its determination on the merits, the trial court erred by ruling upon the arbitrability question regarding the loss of consortium claim rather than leaving it to the arbitrator.

*Wrongful Death and Loss of Consortium*

Appellants also contend that the trial court erred in carving out the loss of consortium claim because it is a derivative wrongful death claim and is thus properly subject to arbitration. Appellees respond that loss of consortium claims are separate and independent claims, distinct from the underlying wrongful death action, and that therefore the trial court was correct in deciding the loss

8

of consortium claims are not subject to the arbitration agreement. Both parties rely heavily upon the Texas Supreme Court's decision in *In re Labatt Food Services* for their respective and directly contrary positions. *In re Labatt Food Services, L.P.*, 279 S.W.3d 640, 643 (Tex. 2009). But just as the trial court was prohibited from pre-emptively reaching the issue of arbitrability of the claim, so are we.[3] The authority to make the initial determination of whether the loss of consortium claim was derivative or not was unambiguously delegated to the arbitrator in the parties' Agreement, and therefore is not ripe for our review. We accordingly do not make that determination at this time.

## CONCLUSION

Having concluded that the trial court abused its discretion in refusing to compel arbitration of all of Appellees' claims and refer the determination of arbitrability of the loss of consortium claim to the arbitrator, we sustain Appellants' issues, reverse the order of the trial court, and remand the case to the trial court for further proceedings consistent with this opinion. All other pending motions are denied as moot.

_____
ROY B. FERGUSON, Judge

November 29, 2022

Before Rodriguez, C.J., and Alley, J., and Ferguson, Judge
Ferguson, Judge, sitting by assignment

---

[3] Our reversal herein of the trial court's order should not be interpreted as indicating that we agree with Appellant's position on this issue or find error with the trial court's analysis with respect to the arbitrability of the loss of consortium claim. We do not reach that issue and it forms no part of this opinion.